**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

MICHAEL HUTCHINSON,           )
                              )
            Plaintiff,        )
                              )
    v.                        )           1:09CV57
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security,                     )
                              )
            Defendant.        )


**MEMORANDUM OPINION, ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Michael Hutchinson, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. The Court has before it the certified administrative record and the parties have made cross-motions for judgment (Docket Entries 7, 10). In addition, Plaintiff recently filed a Motion for Prompt Decision (Docket Entry 14).

**PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits on November 17, 2004, alleging a disability onset date of June 15, 2002. (Tr. 56-58.)[1] His application was denied initially and upon reconsideration. (Tr. 47-49, 51-54.) Plaintiff then requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 43), which he attended on November 27, 2007, with his attorney and

_____

[1] Transcript citations refer to the administrative record.

a vocational expert (Tr. 15, 327-71). The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. 26) and, on November 26, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. 5-7).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since June 15, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: work-related back injury due to injuries sustained in a motor vehicle accident and adjustment disorder with anxiety and a depressed mood (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . . .

5. After careful evaluation of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the limited range of medium work involving simple, unskilled work activity which only requires one, two or three step instructions; lifting or carrying 25 pounds frequently and 50 pounds occasionally; standing or walking with normal breaks for a total of 6 hours of an 8-hour workday; pushing and pulling within the aforementioned weight restrictions with his upper and lower extremities; bilateral manual dexterity for both gross and fine manipulation with handling and reaching; and stooping occasionally with no additional postural limitations noted.

(Tr. 17, 19.)

In light of the above findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff was able to perform his past relevant work as a delivery driver. (Tr. 25.) Accordingly, he determined that Plaintiff was not under a "disability," as defined in the Act, from his alleged onset date of June 15, 2002, through the date of the decision. (Tr. 26.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (1999).[3] A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to

_____

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

## Assignments of Error

In the present case, the ALJ found that Plaintiff, who was not working, met his burden at step one of the sequential evaluation process ("SEP").  (Tr. 17.)  At step two, he further determined that Plaintiff suffered from the following severe impairments: work-related back injury due to injuries sustained in a motor vehicle accident and adjustment disorder with anxiety and a depressed mood. (Id.) However, the ALJ found at step four that, although these impairments created both exertional and non-exertional step three limitations, Plaintiff could nonetheless perform his past relevant work as a delivery driver.  (Tr. 19, 25.)

Plaintiff argues that substantial evidence fails to support

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

the Commissioner's findings at steps three and four.  (Docket Entry 9 at 2-12.)   In particular, he contends that, at step three, the ALJ failed to properly weigh the medical source opinions, including the opinion of Plaintiff's treating physician.  (<u>Id.</u> at 2-9.) In making this argument, Plaintiff also questions the ALJ's assessment of Plaintiff's credibility.  (<u>Id.</u> at 11-12.)   At step four, Plaintiff challenges the ALJ's finding that he can safely perform his past relevant work.  (<u>Id.</u> at 9-10.) Finally, Plaintiff argues that "the Appeals Council erred in failing to follow 4th Circuit law requiring specific consideration of additional evidence." (<u>Id.</u> at 2.)   Defendant contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.  (<u>See, e.g.</u>, Docket Entry 11 at 20.)

## 1.  Treating Physician Opinion

Plaintiff first argues that

the ALJ erred in his evaluation of medical opinion evidence in failing to adequately evaluate the medical opinion evidence, in failing to state what weight was given to a treating physician opinion, and in failing to recontact the claimant's treating pain physician when he felt the treating physician's opinion was unsatisfactory, and in substituting his own opinion for that of physicians.

(Docket Entry 9 at 2.)   These contentions primarily dispute the ALJ's application of 20 C.F.R. §§ 404.1527(d) and 416.927(d), better known as the "treating physician rule."   In particular, Plaintiff contends that the ALJ gave inadequate weight to the opinion of Dr. Mark Phillips, a specialist in pain management who treated Plaintiff for more than four years, and instead based his

decision chiefly on the opinions of the non-examining state agency physician and Plaintiff's surgeon, Dr. Jeffery Jenkins. (Docket Entry 9 at 4-6.)

The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspecitve to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The rule also recognizes, however, that not all treating sources are created equal. Rather, the nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords it. See 20 C.F.R. §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii).

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2)-(4) and 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178. Moreover, opinions by physicians regarding the ultimate issue of whether a plaintiff

is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(e).

In the present case, the ALJ declined to give Dr. Phillips' opinion controlling weight because it lacked adequate support from objective medical evidence. (Tr. 24.) An ALJ must give "good reasons" for discounting a treating physician's opinion by applying the factors set out above, see 20 C.F.R. § 404.1526(d)(2); however, a careful reading of the ALJ's decision reveals that he did, in fact, apply the substance of the relevant considerations in discounting Dr. Phillips' opinion and thus no error occurred, see Botta v. Barnhart, 475 F. Supp. 2d 174, 188 (E.D.N.Y. 2007) (observing that ALJ's failure to explicitly discuss certain matters "does not require remand if it can be ascertained from the entire record and the ALJ's opinion that the ALJ 'applied the substance' of the treating physician rule"). First, a full page in the decision recounts Dr. Phillips' treatment notes from 2003 through 2007, showing a long relationship and a relatively high frequency of examination. (Tr. 22-23.) This discussion reveals that, although Dr. Phillips performed some objective testing (i.e., straight leg raises, pinpricks, and strength assessments), the treating relationship largely revolved around Plaintiff's subjective reports of pain and numbness, for which Dr. Phillips prescribed various medications. (Id.) Further, the decision does not expressly identify Dr. Phillips as a specialist in pain

management, but does note that he worked as a physician at Guilford Pain Management, P.A., a specialist practice. (Tr. 22.)

Taken in isolation, some of the foregoing factors would have entitled Dr. Phillips' opinion to a high degree of deference. However, the ALJ did not have to consider only those matters, but rather also properly examined whether objective medical evidence and the record as a whole supported Dr. Phillips' opinion. In this regard, nearly all of Dr. Phillips' objective neurologic findings fell within normal limits (even when taking Plaintiff's 4/5 quadriceps strength and attenuated perception into account) and the straight leg raise tests also produced typically normal results. (Tr. 22-23.) Moreover, the only mention of Plaintiff's functional abilities in Dr. Phillips' treatment notes reflect Plaintiff's own opinions, not those of his physician:

> The patient notes that his limitations seem to have worsened since his last functional capacity evaluation. He's able to lift about 15 pounds, he can stand for about an hour and sit for about an hour and is limited to minimal if any bending or squatting.

(Tr. 304.) Thus, Dr. Phillips supports his opinion that Plaintiff is "totally and permanently disabled" with little more than Plaintiff's subjective complaints of pain and reports of functional abilities, not objective clinical evidence.

Dr. Phillips' opinion also conflicts with the medical evidence provided by Plaintiff's surgeon, Dr. Jenkins, and the state agency physician, Dr. Dascal. Plaintiff argues that Dr. Jenkins' opinion "does not provide a good picture of [Plaintiff's] long term functional status" because he "saw the claimant when his condition

was not stable." (Docket Entry 9 at 5.) However, both the record and Plaintiff's own brief belie this assertion. Plaintiff remained in Dr. Jenkins' care until Plaintiff reached maximum medical improvement, at which point he received a permanent partial impairment rating of 15% to his back. (Id.) Only upon assigning this rating and referring Plaintiff to Dr. Phillips for pain management did Dr. Jenkins opine that Plaintiff could perform "a light duty physical demand job with leg lift capability of 20 pounds and torso lifts of 20 pounds." (Tr. 152.)

Moreover, Plaintiff's acknowledgment that Dr. Phillips' care did not commence until "after [Plaintiff] was felt to have recovered more or less maximally" (Docket Entry 9 at 5) limits the value of Dr. Phillips' opinion. Specifically, Dr. Phillips did not engage with Plaintiff for the purpose of gathering objective medical evidence to assist in his recovery, but instead with the goal of managing the subjective pain symptoms associated with Plaintiff's impairment; as a result, Dr. Phillips largely relied on the earlier objective findings of Dr. Jenkins, which included two MRIs and surgical findings. (See Tr. 152-164.) Where the opinions of these two treating physicians diverged as to Plaintiff's functional abilities, the ALJ was entitled to place greater credence in the treating opinion more closely grounded in clinical evidence. Under these circumstances, the ALJ's decision to only give "some weight," rather than controlling weight, to Dr. Jenkins' opinion properly reflects a proper exercise of the ALJ's authority to resolve inconsistencies in the medical evidence.

The ALJ also properly relied on the RFC assessment by Dr. Dascal, which recounted Plaintiff's objective physical limitations, chiefly his 4/5 left quadriceps strength and 15% permanent back impairment, as well as the underlying MRI findings and surgical notes. (Tr. 270.) Dr. Dascal detailed Plaintiff's subjective complaints of radiculopathy, as assessed by Dr. Phillips, and Plaintiff's daily activities, which included walking 30-45 minutes per day, helping care for his children, driving, and performing some household chores. (Id.) In other words, Dr. Dascal reviewed the record, particularly the medical evidence, as a whole and determined that Plaintiff could perform medium work with occasional stooping and further exertional limitations, all of which the ALJ adopted. (Tr. 19, 264-70.) Notably, nothing supports Plaintiff's assertion that, by making this adoption, the ALJ substituted his own opinion for that of Plaintiff's physicians. The ALJ clearly based his assessment of Plaintiff's abilities on the RFC determined by Dr. Dascal, which was supported by substantial evidence.

Plaintiff's contention that the ALJ had a duty to recontact Dr. Phillips similarly lacks merit. "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues <u>necessary</u> for <u>adequate</u> development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is <u>inadequate</u>." <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173 (4th Cir. 1986) (emphasis added); <u>see also</u> <u>Kersey v. Astrue</u>, 614 F. Supp. 2d 679, 693-94 (W.D. Va. 2009) ("The regulations require <u>only</u> that the medical evidence be 'complete' enough to make a determination

regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." (citing 20 C.F.R. §§ 404.1513(e), 416.913(e)) (emphasis added); France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000) ("[T]he ALJ does not otherwise have an obligation to obtain additional information if the record is adequate to make a determination regarding a disability claim." (emphasis added)). "[T]hat does not mean that 'a remand is warranted any time the claimant alleges that the ALJ has neglected to complete the record.'" Hood v. Astrue, No. SKG-08-2240, 2009 WL 4944838, at *8 (D. Md. Dec. 14, 2009) (unpublished) (quoting Brown v. Shalala, 44 F.3d 931, 935 n.9 (11th Cir. 1995)).

> Instead,

> [t]he Fourth Circuit has held that a case should be remanded for failure to develop the administrative record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, *and* such failure is prejudicial to the claimant . . . ." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)(emphasis added). "Prejudice can be established by showing that additional evidence would have been produced . . . and that the additional evidence might have led to a different decision." Ripely v. Chater, 67 F.3d 552, 557 n. 22 (5th Cir. 1995). If a plaintiff fails to show that he/she was prejudiced by the ALJ's failure to develop the record, remand is not warranted.

Zook v. Commissioner of Soc. Sec., No. 2:09cv109, 2010 WL 1039456, at *4 (E.D. Va. Feb. 25, 2010) (unpublished) (brackets and ellipses in original); see also Bell v. Chater, 57 F.3d 1065, 1995 WL 347142, at *5 (4th Cir. 1995) (unpublished) (finding no reversible error where Plaintiff "failed to indicate how . . . unidentified [medical] reports would have impacted the ALJ's assessment");

Scarberry v. Chater, 52 F.3d 322, 1995 WL 238558, at *4 n.13 (4th Cir. 1995) (unpublished) (ruling that "ALJ had before him sufficient facts to determine the central issue of disability" where the plaintiff's attorney failed to "identify what the missing evidence would have shown").

In the case of medical evidence, the hearing officer must develop a plaintiff's complete medical history for at least the twelve months preceding the month of that plaintiff's application and must assist the plaintiff in obtaining medical reports from his doctors. 20 C.F.R. § 404.1512(d). Development of the record may include ordering consultative examinations "when evidence as a whole, both medical and nonmedical, is not sufficient to support a decision," 20 C.F.R. § 404.1519a(b). When assessing a plaintiff's RFC, such evidence includes "descriptions and observations of [the plaintiff's] limitations from [his] impairment(s), including limitations that result from [his] symptoms such as pain, provided by [the plaintiff], [his] family, neighbors, friends, or other persons," 20 C.F.R. § 404.1545(a)(3).

Here, the ALJ never determined that the existing medical evidence was inadequate. Rather, he found that Dr. Phillips' statement as to the ultimate issue was "not supported by the objective evidence," such that it was "not given controlling weight." (Tr. 24.) Plaintiff devotes nearly a full page of his brief to a list of Dr. Phillips' objective findings from the existing record and he provides no explanation as to how "additional information and clarification of Phillips' treatment

-15-

records and medical assessment" would mandate a different disability determination. (Docket Entry 9 at 6.) In fact, the very wording of Plaintiff's request demonstrates a desire, not for additional objective evidence, but merely for Dr. Phillips' to expound upon how the existing evidence supports his opinion as to the ultimate issue. Because the ALJ found sufficient evidence to support his determination absent this explanation, "any failure on the part of the ALJ to ferret out additional information did not constitute reversible error." Bell, 1995 WL 347142, at *5.

## 2. Credibility

In a related argument, Plaintiff challenges the ALJ's finding at step three of the SEP that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Docket Entry 9 at 11-12.) SSR 96-7p, as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statement about symptoms.[6] "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) and 404.1529(b)). In the present case, Plaintiff specifically alleged pain and weakness in his back and left leg as a result of his documented back injury. (Tr. 20.)

---

[6] SSR 96-7p, in turn, clarifies credibility assessment considerations as provided for under 20 C.F.R. §§ 404.1529 and 416.929.

Plaintiff's case thus hinges on the second part of the test, which requires that,

> after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, . . . the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. <u>See</u> 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, <u>see</u> <u>id.</u>; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), <u>see</u> 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, <u>see</u> 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

<u>Id.</u> at 595.

Here, Plaintiff contends that the ALJ failed to adequately consider all of the evidence in the record before concluding that Plaintiff's statements regarding pain were not entirely credible. (Docket Entry 9 at 11-12.) Plaintiff particularly challenges the ALJ's conclusion in light of Plaintiff's restricted activities of daily living, as reflected in testimony and medical records, his ongoing use of prescription pain medications, and his behavior during his disability hearing. (<u>Id.</u>) Plaintiff correctly notes that his medical records reveal left leg weakness and numbness, as well as consistent complaints of significant pain in his leg and back. (<u>Id.</u> at 11.) Evidence also well documents Plaintiff's continued reliance on pain medications. (<u>Id.</u>)

The issue, however, is not whether Plaintiff's pain exists; it undoubtedly does and the ALJ so acknowledged. (See Tr. 24.) Rather, the Court must determine whether the ALJ failed to consider all of the evidence in the record before determining that the extent and limiting effects of that pain were not as great as Plaintiff claimed. Significantly, in evaluating a plaintiff's credibility, the ALJ has the responsibility to draw inferences from, and resolve conflicts in, the record. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citing Smith v. Schweiker, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). When challenging an ALJ's exercise of that authority, a plaintiff must show that the ALJ either ignored crucial portions of the record or that his credibility finding was patently unreasonable given the evidence in the record. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); see also Basu-Dugan v. Astrue, No. 1:06CV00007, 2008 WL 3413296, at *6 (M.D.N.C. Aug. 8, 2008) (unpublished) (holding that credibility "determinations will be upheld as long as there is some support in the record for the ALJ's position and it is not patently wrong").

In this case, the ALJ's decision demonstrates that he considered all of the medical and testimonial evidence Plaintiff claims he ignored. The decision memorializes Plaintiff's ability to drive without restrictions, but notes that he does not drive often. (Tr. 24.) It also reflects his ability to perform at least some household chores, walk about 30 minutes per day, attend church services, and "care for young children at home . . . without any particular assistance." (Id.) Plaintiff argues that the evidence

-18-

highlighted in the decision fails to recount the greater limitations found in the testimony and function reports provided by Plaintiff and his wife, including the greatly reduced scale of his household activities, difficulty sitting through church sermons, and the help he receives, at least on occasion, in caring for his children. (Docket Entry 9 at 11-12.) Plaintiff also claims that the ALJ ignored his testimony that he would have to lie down during an eight-hour workday and his posture during the hearing, which involved him leaning on a table with both arms. (See id.)

As stated above, however, the ALJ must resolve conflicts in the record and the decision demonstrates that he did just that in the present case. Specifically, as the ALJ's decision notes, the record supports a finding that the level of limitation alleged by Plaintiff is out of character with the evidence as a whole, particularly the objective medical evidence. (Tr. 24-25.) Clinical findings show a claimant with a 15% back impairment, some reduced left leg strength, and pain managed well enough through medication that, in his most recent medical records, his dosage was reduced. (Tr. 21-23.) These findings understandably cast doubt on Plaintiff's alleged inability to sit through a hearing which lasted less than an hour. Plaintiff's use of a cane at the hearing, during which he confirmed Dr. Phillips' finding that Plaintiff could walk unassisted (Tr. 344), also undermined his credibility, see Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (ruling that ALJ properly discounted plaintiff's testimony where plaintiff's use of cane at hearing was inconsistent with medical

evidence); see also Lowery v. Callahan, No. C96-3701SI, 1997 WL 464832, at *4 (N.D. Cal. July 29, 1997) (unpublished) (plaintiff's "'theatrical attempt' with [a] cane was unconvincing, undermining his credibility"); Greyer v. Sullivan, No. 91C3705, 1992 WL 373028, at *2 (N.D. Ill. Dec. 11, 1992) (unpublished) (same). In light of these considerations, the Court cannot conclude that the ALJ either ignored crucial portions of the record or that his credibility finding was patently unreasonable given the evidence before him. Weighing all of the above evidence against the testimony from Plaintiff and his wife, and considering that the relevant materials were cited in the decision itself, the ALJ's credibility analysis was well-grounded in the evidence and articulated sufficiently to provide meaningful review, as required by SSR 96-7p.

## 3. Past Relevant Work

Plaintiff next challenges the ALJ's findings at step four of the SEP, regarding Plaintiff's ability to return to his past relevant work.[7] Notably, Plaintiff bears the burden of showing his inability to work. Hunter, 993 F.2d at 35. Here, Plaintiff specifically argues that (1) his continued use of Vicodan for pain control and (2) his moderate limitation in concentration, persistence, and pace prevent him from returning to his work as a delivery driver. (Docket Entry 9 at 9-10.) According to

---

[7] Plaintiff also contests the ALJ's alternative, step-five determination that Plaintiff could perform other work which exists in significant numbers in the national economy. (See Docket Entry 9 at 10-14.) Because the ALJ did not err at step four, this Recommendation goes no further.

Plaintiff, driving under these conditions could pose dangers to both himself and the public due to drowsiness and inattention and could also pose liability issues for his employer. (Id.) These contentions lack merit.

As an initial matter, the evidence reflects that Plaintiff reported only "minimal" side effects from Vicodan use. (Tr. 236, 292, 300, 313.) Moreover, neither the hearing transcript nor the medical records ever mention that Plaintiff experienced drowsiness; to the contrary, leg pain and nerve damage, rather than any mental limitations, represent Plaintiff's only noted difficulties in driving. (Tr. 85, 86, 90.)[8] The record further confirms that Plaintiff holds a driver's license with no restrictions and drives his own vehicle, including transporting his young children on a regular basis. (Tr. 85, 222, 270.) Under similar circumstances, courts have held that plaintiffs could return to work as drivers despite their continued use of narcotics. Rose v. Astrue, No. Civ. 07-5079-RHB, 2008 WL 4274442, at *3 (D.S.D. Sept. 17, 2008) (unpublished) (ruling that plaintiff could return to work as school bus or taxi driver where no physician set driving restrictions due to pain medication side effects and plaintiff continued to drive throughout the relevant time period); York v. Commissioner of Soc. Sec., No. 08-cv-321 (PGS), 2008 WL 4936971 (D.N.J. Nov. 17, 2008)

---

[8]  Notably, according to Plaintiff's Physical RFC Assessment, he is capable of operating hand and foot controls on an unlimited basis despite continuing issues with his left leg. (Tr. 264.)

(unpublished) (holding that plaintiff's continued oxycodone use did not preclude past relevant work as delivery driver).[9]

To the extent Plaintiff suggests that his prescription drug usage, and corresponding side effects, would increase should he return to work, the record fails to support this assertion. Dr. Phillips did note that, according to Plaintiff, "[i]f [Plaintiff] over exerts, his pain goes up significantly." (Tr. 296.) However, for reasons discussed in the preceding subsections, Plaintiff has the capacity to perform substantial work; nothing in the record thus required the ALJ to find that Plaintiff's return to work would result in overexertion that would cause an increase in pain and need to medicate. Further, Plaintiff's most recent medical records indicate that he had reduced his Vicodan use to just two tablets per day (Tr. 287) and that, as early as 2002, Dr. Jenkins strongly recommended that Plaintiff get off of narcotics entirely "as these medications are addictive and in the long run . . . are not helpful" (Tr. 156). This evidence supports the view that Plaintiff could manage his narcotic usage around his work schedule or, alternatively, that he could use non-narcotic medications to control his pain. Plaintiff has made no showing to the contrary.

Similarly, the record fails to indicate that Plaintiff's moderate limitation in concentration, persistence, and pace would

_____

[9] The Ninth Circuit recently remanded a case for reconsideration of plaintiff's allegations that mandatory drug testing requirements would preclude performance of past work as a driver. <u>Berry v. Astrue</u>, 622 F.3d 1228, 1233-34 (9th Cir. 2010). Plaintiff, however, has not alleged that such testing requirements would impact his capacity to perform his prior work.

preclude his past work. Dr. Dascal's Mental RFC Assessment noted "moderate" limitations in only two sub-categories of "sustained concentration and persistence," namely Plaintiff's abilities to carry out detailed instructions and to perform at a consistent pace. (Tr. 259-60.) Overall, the examiner found that Plaintiff "has adequate concentration and persistence" and that, although he "is anxious and somewhat depressed . . . he is able to understand and respond to directions, and perform [simple, routine, repetitive tasks]." (Tr. 262.) None of these findings suggest that Plaintiff's concentration level would create a hazardous situation behind the wheel. In sum, substantial evidence supports the ALJ's step-four finding that Plaintiff could return to his past work.

## 4. Consideration of Evidence by Appeals Council

Finally, Plaintiff argues that "[t]he Commissioner erred in failing to specifically consider additional evidence submitted at the Appeals Council level." (Docket Entry 9 at 15.) This evidence primarily consists of Dr. Phillips' office notes from February 13, 2008, which provide the following:

> In my opinion, [Plaintiff's] inability to work at this time is based not only on his back problems but the fact that there's been some difficulties in controlling his blood sugar resulting in fluctuation which affect his mentation.
>
> The patient is limited to sitting no more than three or four hours total in an eight hour [workday]. With frequent breaks. He is limited in lifting as outlined above. I do not feel he can squat or stoop.

(Tr. 314.) Plaintiff contends that, because the Appeals Council's decision failed to specifically mention or to discuss the weight

given to this opinion, the Appeals Council did not comply with its "'duty to scrutinize "the record as a whole" to determine whether the conclusions reached (by the ALJ) are rational.'" (Docket Entry 9 at 15) (quoting Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)).

Significantly, both parties acknowledge that the Appeals Council need only address new and material additional evidence. Wilkins v. Secretary of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (citing Williams v. Sullivan, 905 2d 214, 216 (8th Cir. 1990)). "Evidence is new within the meaning of this section if it is not duplicative or cumulative." Id.; see generally Associate Comm'r of Hearings and Appeals, Soc. Sec. Admin., Pub. No. 70-074, Hearings, Appeals, Litig., and Law (LEX) Manual, § I-3-306(A)(1990). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)).

In the present case, Dr. Phillips' cited notes satisfy neither of these requirements. Notably, the medical records reflect Plaintiff's long history of poorly controlled diabetes. (See Tr. 148, 207.) In fact, a 2003 progress note shows that Plaintiff "adamantly refused" to start insulin, despite poor control on "maximum oral therapy." (Tr. 207.) This note also reflects Plaintiff's hesitancy to begin recommended counseling at that time. (Id.) Thus, Dr. Phillips' opinion regarding Plaintiff's diabetes and related mental issues adds nothing new.

Likewise, Dr. Phillips' own earlier treatment note, dated February 22, 2006, reflects Plaintiff's statement that he "can stand for about an hour[,] can sit for about an hour[,] and is limited to minimal if any bending or squatting." (Tr. 304.) This evidence belies Plaintiff's assertion that the "sitting limitations and total ban on squatting or stooping [described in the records from February 13, 2008] would change the vocational picture dramatically." (Docket Entry 9 at 15.) In fact, the opinion expressed in the note from February 13, 2008, essentially rephrases Dr. Phillips' prior statements, which the ALJ declined to give controlling weight based on the objective medical evidence. (See Tr. 24.) Given the lack of new and material evidence in the supplemental record, the Appeals Council properly denied Plaintiff's request for review.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion to reverse the decision of the Commissioner (Docket Entry 8) be **DENIED**, that Defendant's motion for judgment on the pleadings (Docket Entry 10) be **GRANTED**, and that this action be dismissed with prejudice.

**IT IS ORDERED** that Plaintiff's Motion for Prompt Decision (Docket Entry 14) is **DENIED AS MOOT.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Date: April 16, 2012